## Illinois Central Railroad Company v. Joseph N. Butler.

1. INSTRUCTION—*To Find for the Defendant.*—The court discusses the evidence in this case and reverses the judgment for the refusal of an instruction to find for the defendant.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1896. Reversed. Opinion filed March 8, 1897.

SIDNEY F. ANDREWS, attorney for appellant; JAMES FENTRESS, of counsel.

MUNSON T. CASE and W. S. JOHNSON, attorneys for appellee.

Mr. Justice Gary delivered the opinion of the Court.

What is said in some of the cases cited about the duty of courts to stand " firmly and fearlessly " is mere declamation; the duty of a court results from higher considerations than any consequences to itself from its judgments.

This is an action by a locomotive fireman, in the service of appellant, to recover damages for personal injury received by the explosion of the boiler of the locomotive April 4, 1892.

On the trial various theories of the cause of the explosion were advanced, and many witnesses testified why, in their opinion, the boiler exploded. Such testimony seems to be admissible under the decision in Camp Point Mfg. Co. v. Ballou, 71 Ill. 417, the witnesses being boiler makers, engineers, or otherwise having experience with engines and boilers; but still, if to qualify a witness to testify as an expert, he must have had experience in reference to the subject of his testimony, what witness was ever the observer of the phenomena attending the explosion of a boiler ?

The only witness who testified to anything that happened at the time was the appellee, who said that the injector (a device that carries water into a boiler) was " working good "—the water glass (by which the quantity of water in the boiler should be shown) indicated sufficient water in the boiler—the steam was 140 pounds (to the square inch) —the speed thirty-five to forty miles an hour.

About two blocks (spaces between streets) from a place at which a stop was to be made, the engineer shut off steam (from going from the boiler to the cylinders), put on the air (applied the brakes), the boiler commenced to blow off (through the escape valve), steam ran up to 145 pounds, " the crown sheet (the top of the fire-box) gave way, and the steam and water, everything, blew out into the cab and blew me right out of the window."

Other evidence leaves no doubt that the crown sheet did give way, but it is quite certain that that feature was not observed by the appellee before he was blown out of the window.

Considering only such evidence as relates to facts, and not

opinions, of why the explosion, there was evidence tending to prove that before the explosion the crown sheet had been in use about eight years; that between the stay bolts, which held it in place against the pressure of the steam, it was bagged or sagged; that at the heads of two or three of those bolts were leaks, known to the appellee; that those heads were thin; that at some former time sediment had collected and formed a crust upon the top of the crown sheet, but had been removed; that the crown sheet had been injured by heat; that the glass gauge and gauge-cocks, by which the quantity of water in the boiler might be ascertained, were not in condition to be relied upon.

The appellee had been fireman of that engine for several days before the explosion, and there is no evidence that a higher pressure of steam was carried at the time of the explosion than was usual; yet the witness whose opinion is most relied upon by the appellee testified that the heads of the bolts were so thin, in his words, "the rivets were so flat that they were not capable of holding a thirty pound pressure."

It is proved, not that the crown sheet tore or split, but was pushed off the bolts or rivets; as the appellee's brief says, "that the rivets were not strong enough to resist the pressure, is abundantly shown by the testimony of the many witnesses of appellant to the effect that the heads were off entirely." Several of those witnesses testified, not that the heads were off, but that the heads (which were conical, made so by riveting) were inverted or cupped.

Now, thick or thin, it is common knowledge that the iron or steel of which those heads were, would not have been cupped or inverted by being pulled through the crown sheet or by the crown sheet being pushed off from them, unless they were first made ductile, by being heated to a much higher temperature than they could have been with water on the top of the crown sheet, and the steam in the boiler at a pressure of 145 pounds.

The evidence as to the crown sheet is irrelevant; whatever may have been the defects in it, such defects had no connection with the explosion.

It did not itself give way. It was forced down off the bolts. The bolts did not give way until they were heated beyond the temperature to which they could have risen, if water had stood upon the crown sheet. The conclusion is irresistible that the crown sheet was not protected by the water; and this may have resulted from a lack of water in the boiler or from a collection of sediment on the top of the crown sheet.

We do not overlook the testimony that there could not have been a lack of water, because soot was on the crown sheet, which would have burned off if there had been no water there. The witness who stated that circumstance went into the boiler after others had been there with kerosene torches after the explosion.

The engineer was the fellow-servant of the appellee. It was his duty to maintain in the boiler enough water for safety, and to keep the gauges in such order as would show the stage of water. If the explosion was from a lack of water, the appellant is not responsible. If it could, with any show of reason, be said that the overheating of the bolts was because of sediment on the crown sheet, then the appellee might recover, as the cleaning of the inside of the boiler was the duty of servants in another department of service; but there is no evidence of any sediment on the crown sheet at the time of the explosion.

The cause of the explosion can not, from the evidence in this record, be charged upon the appellant. Sack v. Dolese, 137 Ill. 129.

The judgment is reversed, specifically for the refusal of an instruction to find for the appellant.